## GRÓSS *v.* GEORGE W. SCOTT MANUF'G Co. *et al.*

*(Circuit Court, N. D. Georgia. July 6, 1891.)*

1. **ACTION TO SET ASIDE DEED—WANT OF EQUITY—DEMURRER.**
   A bill to compel defendants to reconvey to plaintiff land which formerly belonged to him is not demurrable for want of equity from the mere fact that it shows that plaintiff conveyed the land to C., who then conveyed to defendants, where plaintiff seeks relief on the ground that defendants secretly employed and paid C. to purchase the land, knowing at the time that he was plaintiff's agent to sell, and that plaintiff relied on him for information and advice as to the value of the land.

2. **SAME—FALSE REPRESENTATIONS.**
   The bill alleged that the land was of great value for the phosphate therein; that defendants stated to C. that they did not want to buy the land for phosphate purposes, which statement C. repeated to plaintiff; and that defendants knew this statement was not true, but their object in making it was to deceive plaintiff as to the true value of the land. *Held,* that these allegations are sufficient, as against a demurrer, to show that defendants knew of C.'s statements to plaintiff, and caused them to be made.

3. **SAME—DILIGENCE IN BRINGING SUIT.**
   There is no lack of diligence shown on plaintiff's part when the bill alleges that those transactions did not come to his knowledge until October, and the suit is brought in November.

4. **SAME—TENDER—EXCUSING FAILURE.**
   Failure to allege tender of the purchase money before suit is not fatal to such bill, where it does allege that tender was not made because plaintiff believed it would be unavailing, and that he is ready to repay the money with interest upon the execution of a deed to him by defendants.

5. **PARTIES—NON-JOINDER—INHABITANTS OF ANOTHER DISTRICT.**
   The bill is not demurrable for non-joinder of the agent, C., who is a resident of a different district from defendants. Rev. St. § 737, provides that non-joinder of parties who are not inhabitants of nor found within the district shall not constitute matter of abatement, though the judgment rendered shall not conclude them, and Equity Rule 47 authorizes the court to proceed without parties, otherwise necessary, who cannot be joined because they are out of the jurisdiction of the court.

In Equity. On demurrer.

Bill by Charles H. Gross against the George W. Scott Manufacturing Company and the De Soto Phosphate Mining Company to compel a reconveyance of land.

*Bisby & Rinehart*, for complainant.

*Candler, Thomson & Candler*, for respondents.

NEWMAN, J. The case made by the bill is substantially as follows: Charles H. Gross, complainant, is a citizen of the state of Pennsylvania. The George W. Scott Manufacturing Company and the De Soto Phosphate Mining Company, defendants, are corporations organized and existing under the laws of the state of Georgia, and citizens of that state. That complainant was in October, 1889, the owner of certain lands on Peace river, in the state of Florida. That one John Cross, a resident of the state of Florida, had been continuously for several years prior thereto, and was at that time, complainant's agent to protect and make sales of said lands; under a general contract, he received 10 per cent. of the proceeds of the sales, when other terms were not specially agreed upon; and that complainant relied upon said Cross in these respects. That about the 7th day of October, 1889, Cross

came to Philadelphia, where complainant resided, and stated that the Scott Manufacturing Company desired to buy lands from complainant, and offered $2.50 per acre for the same. Complainant inquired if there were phosphates on said lands, but Cross represented that the Scott Manufacturing Company desired the lands for other purposes. Complainant, having been accustomed and obliged to rely upon his agent for information in regard to said lands, acted thereon, and, on the faith of his representations, contracted to sell the same at $2.50 per acre. Thereupon, at Cross' direction, complainant made him a deed to the lands, received his check for the purchase price, and paid Cross 10 per cent. of the amount as commission. The inquiry complainant made of Cross was material and important, and upon the existence or non-existence in said lands of phosphates depended in a large degree their value. That prior to this sale phosphates had been discovered on lands on Peace river of a very valuable character, which was well known to Cross and to defendants. Complainant did not know until six months after the sale that the lands contained any phosphates, and complainant avers said lands were rich in phosphates, and were worth from $25 to $100 per acre at the time of the sale, and some of the land worth over $100 per acre. That the George W. Scott Manufacturing Company, through its president, George W. Scott, and other officers, had before the said sale employed Cross to purchase said lands of complainant under contract to pay him for his services and expenses while attending to the same, and that said company did pay Cross' expenses from Florida to Philadelphia, and compensation in money, while engaged in negotiating the purchase. That said company knew that Cross was complainant's agent to sell the land, and that complainant relied upon him as such, and for information concerning the value of the lands. Complainant did not know until October, 1890, of this arrangement between Cross and defendant. That the Scott Company engaged the services of Cross for the purpose and with the intent of influencing him to act in its interest, and to disregard his duties to complainant, and such was its effect. On the 12th day of October, 1889, Cross made the Scott Manufacturing Company a deed to certain lands, embracing a part of the land conveyed by complainant to Cross, and on the 13th day of November, 1889, made a deed to said company to certain lands, including the remainder of the land conveyed by defendant to Cross, and on November 21st the Scott Manufacturing Company conveyed to the De Soto Phosphate Company part of the land conveyed by complainant to Cross, (which is described, but is immaterial here.) The two defendant corporations are composed, substantially, of the same members and stockholders. That the directors and other officers are substantially the same persons. The phosphate company had been for a year before 1889 mining phosphates on Peace river and vicinity. The Scott Manufacturing Company had been for some years manufacturing fertilizers in Atlanta, Ga. That the two companies are, in interest, the same, though separate corporations. That the phosphate company knew that Cross was complainant's agent, as stated, when the Scott Company employed

him, and knew of the fraud on complainant, and acquired its interest with a knowledge of such fraud. Long before October, 1889, defendants' officers and agents had been examining lands on Peace river, and purchasing phosphate lands for their purposes, or to sell. Before Cross' visit to Philadelphia, the president of the manufacturing company, or some other officer, gave Cross a description of complainant's land which the company wished to purchase, and secretly employed Cross to purchase the same as low as he could. The defendants and Cross knew before they bought the land that they contained phosphates, and that their actual market value was many times greater than the amount paid therefor. When Cross was employed by defendants, as stated, their officers and agents represented to Cross that they wanted the land to control the use of the river, and for other purposes, and did not want them for phosphates; which statements were false in fact, and made to deceive complainant, and conceal from him the value of the land; and complainant was deceived, and, relying upon Cross, made no further inquiry. That the legal title of said land is still in the defendants. That complainant is ready and willing to pay the defendant the George W. Scott Manufacturing Company the amount paid complainant for the lands, with interest thereon, with the execution and delivery of the deed to complainant, and complainant would have made tender thereof to said company before filing this bill but for the belief and conviction that such tender would not have been accepted. Complainant tenders in the bill to the defendants the full amount of purchase money received for the land from Cross, with legal interest thereon, and offers to pay the same in any manner or time that the court may decree, upon reconveyance of the land unincumbered, in the same or in as good condition as when conveyed to defendants. Discovery is waived except as to 14 interrogatories which were propounded to the defendants. The prayer is for an order and decree that the defendants convey, by good and sufficient deeds of conveyance, the lands described, and for an account of all the phosphates and phosphate ores, if any, taken from said lands, and for damages, if any, to the land, and for such other and further relief as to the court may seem just to make. There is also prayer for injunction, which has not been insisted upon. The demurrer is upon two grounds: *First*, that there is no equity in the bill; *second*, that John Cross is a necessary party to the bill. The first ground of the demurrer, that there is no equity in the bill, is subdivided in the argument, and in the brief filed by counsel, and urged, upon four grounds:

"*First*, because it appears from the bill that complainant dealt with and conveyed the land to Cross, and did not deal with or convey to defendants. Nor is it alleged that defendant companies, or either of them, knew of any of the representations Cross made to complainant."

The whole case made by complainant in this bill is grounded upon the facts that the defendants secretly employed Cross as their agent; and paid him as such, to purchase the land, knowing at the time that he was the agent for complainant to sell the land, and that complainant relied on him for information and advice as to the value of the land and

the price of the same. The fact, therefore, that complainant conveyed the land to Cross would seem to be immaterial, in view of the general allegations of the bill and the other facts set up. As to the position that it is not alleged that defendants knew of Cross' representations to complainant, the allegation in the bill is that defendants stated to Cross "that they did not want to buy the lands aforesaid for the phosphate that was on them, or for phosphate purposes;" and then "that said Cross repeated said statements and representations, in substance, to complainant," and, further, "that defendants knew they were not true, and that the principal object of defendants in making such statements and representations was to mislead and deceive your orator, and to conceal from him the true value of this said land." It would seem from this that the defendants not only knew of the representations made by Cross to complainants, but caused them to be made.

It is next insisted that—

"There is no allegation of fraud on the part of defendants in procuring title to them, or either of them, but that they procured title to be made to Cross. Where relief is asked on the ground of fraud, the bill must state the case with certainty and definiteness. It must allege specific acts and language. A general charge of fraud is insufficient, nor is it enough that fraud might be inferred."

I think this subdivision of the first ground of the demurrer has really been disposed of in what has just been said, and need not be repeated here. The allegations seem to be sufficiently specific and definite. All the acts complained of seem to be fully set out, and, as said before, the basis of the case made for relief is that the Scott Manufacturing Company employed Cross as its agent, knowing at the time that he was the complainant's agent, and influenced him to disregard his duty to complainant.

It is said next that no diligence is shown by complainant to protect his rights. The statement in the bill on that subject is that—

"Orator avers that it did not come to his knowledge until six months after the execution and delivery of the deed [alluding to the deed made by complainant to Cross] that the land thereby conveyed contained any phosphate."

And afterwards in the bill—

"That orator avers that he did not know until the early part of October, 1890, that said John Cross had received, or had agreed to receive, from said company, its officers or agents, any compensation for his services rendered in buying said land, or his expenses while attending thereto, or was otherwise in the employ of said company, its officers or agents, to perform service to it or them inconsistent with his duties as your orator's agent."

The bill was filed November 3, 1890; so that, certainly, no lack of diligence is apparent.

Further objection urged to the bill is that it does not allege tender of the purchase of land. The statement in the bill on this subject is as follows:

"Your orator avers that he is ready and willing to pay to the defendant the manufacturing company the consideration money paid your orator for said lands, with interest thereon, upon the execution and delivery of a deed of

conveyance thereof to your orator, and avers that he would have made a tender thereof to said company before filing this bill but for the belief and conviction that such tender would not have been accepted. And your orator hereby tenders to the defendants the full amount of purchase money, aforesaid, received for said lands from the said Cross, with legal interest thereon, and hereby offers to pay the same in such a manner and at such times as this honorable court may decree, upon the reconveyance thereof to your orator, unincumbered, and in the same or as good condition as when they were conveyed to the defendants, and to abide by such other conditions as this honorable court may deem just and equitable."

It would seem that complainant offers to do equity, and to repay the purchase money of the land with interest. If complainant should, on the final hearing, appear to be entitled to the decree, this matter can be fully controlled, and full justice done to defendants, in this respect, in the decree and judgment of the court. I do not understand the rule to be that tender back of the purchase money in a case like this is absolutely essential for maintaining either a bill in equity or proceeding at law. It is a matter that is controlled very largely by the circumstances of the case; and I would be unwilling in this case to turn the complainant out of court for lack of a former tender, when all the rights he may have in that respect can be fully protected, and his claim for a repayment allowed in ample measure.

The second ground for demurrer, namely, that John Cross is a necessary party to the bill, seems to be controlled by the statute, the equity rule, and the decisions on the subject. The bill states that John Cross, at the time of the transaction referred to in the bill, resided in the state of Florida, and it is to be presumed that he still resides there. Section 737, Rev. St. U. S. is as follows:

"When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and non-joinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit."

Equity Rule 47 is as follows:

"In all cases where it shall appear to the court that persons, who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in their discretion, proceed in the cause without making such persons parties: and in such case the decree shall be without prejudice to the rights of the absent parties."

There are three classes of parties to a bill in equity: *First*, merely formal, although proper, parties; *second*, those having an interest in the controversy, and whose interest and absence from the bill being called to the attention of the court, it will require to be made parties before de-

ciding the case, if within its jurisdiction, but if not within its jurisdiction, the court will administer such relief as may be in its power between the parties before it; *third*, indispensable parties, without whom the court will not proceed with the case at all. *Shields* v. *Barrow*, 17 How. 13C; *Barney* v. *Baltimore City*, 6 Wall. 284.

The prayer of the bill in this case, as has been stated, is for a reconveyance by defendants to complainant of the land in controversy, and for an account of phosphates, if any, taken from, or damages to, the land. Now, can the right of complainant to have this decree be determined without Cross as party? According to the bill, the deed made by complainant to Cross, and by Cross to defendant, was merely formal, and for convenience in getting the title into defendants. While it seems he would be a proper party, the court is not prepared to say that his presence is indispensable to granting the relief prayed for. It appears that Cross acted only as an intermediary between complainant and defendant, and that the real substantial issue is between the present parties to the bill. Conforming to the statute and equity rule above quoted, and to the decisions of the supreme court on the subject, this is a case in which the court should proceed with the parties before it, and the demurrer on this last ground cannot be sustained. Fos. Fed. Pr. § 50. See, also, *Conolly* v. *Wells*, 33 Fed. Rep. 205, in which the decisions of the supreme court on the subject are collated. The demurrer in this case will be overruled.